IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| CALVIN WASHINGTON<br>106 Fredna Ave.<br>Hattiesburg MS 39041<br>  *Plaintiff*<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER<br>CORPORATION d.b.a. Amtrak<br>1 Massachusetts Avenue, NW<br>Washington, DC 20001<br>  *Defendant*<br><br>and<br><br>JOHN DOE #1<br>Addresss: Unknown<br>  *Defendant*<br><br>and<br><br>JOHN DOE #2<br>Address: Unknown<br>  *Defendant* | Case No: _____ |

**COMPLAINT**

**(Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Negligence, Intentional and Negligent Infliction of Emotional Distress, False Imprisonment, Discrimination Based on Race, and Discrimination Based on Disability)**

1

PLAINTIFF, Calvin Washington by and through the undersigned counsel, hereby submits this complaint against the above-named Defendant National Railroad Passenger Corporation ("Amtrak"), as well as Defendant John Doe #1, and John Doe #2 as employees of Amtrak and individually, to recover damages related to Defendants' Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Negligence, Intentional and Negligent Infliction of Emotional Distress, False Imprisonment, Discrimination Based on Race, and Discrimination Based on Disability

## Jurisdiction and Venue

1. This is a civil action which falls under this court's original jurisdiction pursuant to 28 U.S.C. § 1331.

2. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 as Plaintiff's claims arise under Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131 and 12161, *et seq*. ("ADA")

3. This United States District Court has original jurisdiction pursuant to 28 U.S.C. § 1331 as Amtrak was created by an Act of Congress, 49 U.S.C. § 24101, *et seq*., and more than one-half of its capital stock is owned by the United States.

4. Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because Amtrak is subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

5. Amtrak is subject to personal jurisdiction in the District of Columbia. Amtrak has committed the acts or omissions alleged herein in the District of Columbia that caused injury and violated rights the ADA and proscribes to Plaintiff.

## Parties

2

6. Plaintiff is and was at all relevant times hereto, a 57 year old African-American citizen of the state of Mississippi. Plaintiff is and was at all times relevant hereto, legally disabled and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 C.F.R. §§ 37, et seq., the Rehabilitation Act, 29 U.S.C. § 794 *et. seq.*

7. Defendant Amtrak is and was at all relevant times herein a Washington D.C. corporation with its principal executive offices at 1 Massachusetts Avenue, NW, Washington D.C., 20001.

8. Defendant John Doe #1, under information and belief is an employee of Defendant Amtrak and was on duty at the time of the below described incident in Washington, DC.

9. Defendant John Doe #2, under information and belief is an employee of Defendant Amtrak and was on duty at the time of the below described incident in Washington, DC.

**Facts Common to All Counts**

10. On or about October 26, 2020 at approximately 8:30am, Plaintiff bought a one-way ticket for $270.00 and boarded Amtrak train #19 in St. Paul Minnesota bound for Hattiesburg Mississippi set to arrive October 28, 2020.

11. At the time, Amtrak was operating on a limited service schedule for certain areas of the country relevant to Plaintiff's travel due to the Covid-19 public health emergency, civil unrest related to the death of George Floyd in Minneapolis, as well as Hurricane Zeta.

12. Plaintiff is an individual with a disability as defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 37 et seq., and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C.A. § 705, and its implementing regulations set forth at 9 U.S.C. §§ 794 et seq.

13. Plaintiff uses a cane to help walk due to a fusion in his neck/back in 2019. As a result of the surgery he suffers from painful nerves on one side of his body and is not able to stand or sit for extended periods. Plaintiff also suffers with difficulty balancing while standing.

14. Amtrak has a service called "Red Cap" which is tasked with assisting passengers and passengers with disabilities.

15. Plaintiff used the Red Cap service for individuals with disabilities by taking a motorized transport cart to the train entrance as well as physical assistance with his person and baggage entering the train. Plaintiff routinely used this service during all entrances and exits from the train.

16. On October 27, 2021 at approximately 2:00 pm, the Plaintiff's train arrived at Union Station in Washington, DC on track #24 as scheduled a for a 4 hour lay-over.

17. Plaintiff departed the train upon arrival at Union Station again using the Red Cap motorized transport as well as physical assistance and baggage handling.

18. During the next approximately four (4) hours, Plaintiff stretched, ate a snack at the station, got his shoes shined, and chatted with the Red Cap employees and shoe shiner.

19. When it came time for the Plaintiff to board the train and resume his trip, he once again used the Red Cap service and chatted congenially with the Red Cap cart driver and a woman on the cart who was also using the service.
20. Upon arrival at the train entrance Plaintiff was met on the train platform by John Doe #1 whose job duties apparently included checking passengers' tickets.
21. John Doe #1 under information and belief is a mid-20s white man of average height with a large muscular frame.
22. John Doe #1 acted in an unprofessional, aggressive and bullying manner towards the Plaintiff from the moment he met the Plaintiff for no apparent reason.
23. John Doe #1 seemed to allude to a service issue for the Plaintiff by asking Plaintiff "if he wanted a refund or to stay here?"
24. John Doe #1 also made aggressive eye contact with the Plaintiff in a menacing and intimidating manner.
25. Plaintiff boarded the train despite the menacing interaction with John Doe #1 and took a seat in the disability section of the train car which was mostly full at the time.
26. While waiting for the train to depart, John Doe #1 demanded Plaintiff move out of the seats designated for individuals with disabilities.
27. When Plaintiff objected noting that he has a disability and pointing out his cane, John Doe #1 responded that it did not matter because he intended to kick him off the train anyway. John Doe #1 repeated several times that he was "kicking you off my train" referring to himself and Plaintiff.
28. John Doe #1 then called another Amtrak employee to the scene who inquired as to the situation and decided to call a supervisor to help.

29. Next arriving on the scene were four (4) police officers and a third Amtrak employee, (herein after referred to as "John Doe #2") and at this point Plaintiff decided to depart the train.

30. As Plaintiff was leaving the train, John Doe #2 stated that Plaintiff appeared to be associated with individuals taking part in civil unrest actions related to the killing of George Floyd because of his appearance and travel origin.

31. Another controversial police killing of Walter Wallace Jr. happened in Philadelphia on October 26, 2020 (a day before this incident) which reignited tensions and protests since the killing of George Floyd.

32. At this point John Doe #2 and John Doe #1 made comments that alluded to Plaintiff being associated with the unrest because of his appearance and travel schedule.

33. Amtrak police arrived at or around the same time as John Doe #2 and generally appeared sympathetic to the Plaintiff. The Amtrak police expressed confusion as to the Amtrak employees' concerns and comments regarding George Floyd. Amtrak police also seemed confused as to John Doe #1's reason for requesting the removal of Plaintiff as not being disabled, or as acting in an agitated manner.

34. Plaintiff remained calm and composed throughout the incident.

35. At some point another Amtrak employee arrives on the scene and makes statements that Plaintiff will get another ticket in a reasonable period of time.

36. Plaintiff, Amtrak police and the latest Amtrak employee to arrive on the scene go into the station to the ticket counter, however no tickets were available for several days.

37. At this point an Amtrak police office helped Plaintiff to book a room and get an Uber ride to the Days Inn in Washington, DC to wait until the next scheduled train.

38. After the incident, Plaintiff was also contacted by Amtrak employees regarding resolution of the incident and related costs incurred by the Plaintiff.

## Count I - Breach of Contract

39. Plaintiff incorporates by reference paragraphs 1-38 as though fully set forth herein.

40. Plaintiff's purchase of a ticket and Amtrak's agreement to give Plaintiff transport via Amtrak train from St. Paul, MN to Hattiesburg, MS constituted a lawful and binding contract.

41. Plaintiff consummated his obligations under the contract by making payment.

42. Amtrak breached the contract by refusing to transport the Plaintiff and removing him from the train without a valid reason.

43. As a result of Amtrak's breach, Plaintiff suffered economic and emotional damages.

44. As a result of Amtrak's breach, Plaintiff was forced to stay at a hotel in Washington DC for 3 days as well as purchase additional clothing for his extended stay.

45. Plaintiff also suffered embarrassment and emotional distress as a result of his removal from the train.

46. This incident occurred during the height of the Covid-19 pandemic and Plaintiff was forced to being exposed to the virus during his prolonged stay at a hotel as

well as unnecessary interactions with Amtrak employees and other people at the station and in transit to the hotel than he otherwise would have been as a result of Amtrak's breach. Such exposure to the virus caused Plaintiff fear and emotional distress.

WHEREFORE Plaintiffs respectfully request that this court enters judgment for Plaintiffs and against Defendants jointly and severally as follows:

Award compensatory damages against Defendants jointly and severally for the claims asserted hereunder, in an amount to be determined at trial, but in any event not less than $250,000.00, plus interest;

Award Plaintiffs the costs of this suit, including reasonable attorneys' fees; and

Such other relief as this Court deems just and proper.

**Count II - Breach of the Covenant of Good Faith and Fair Dealing**

47. Plaintiff incorporates by reference paragraphs 1-46 as though fully set forth herein.
48. Amtrak breached the covenant of good faith and fair dealing inherent in all contracts by unlawfully removing Plaintiff from the train.
49. Amtrak further breached the covenant by discriminating against the Plaintiff based on race and based on his disability.
50. Amtrak's breach of the covenant caused significant and substantial harm to the Plaintiff both economically as well as his mental and emotional well-being.

WHEREFORE Plaintiffs respectfully request that this court enters judgment for Plaintiffs and against Defendants jointly and severally as follows:

Award compensatory damages against Defendants jointly and severally for the claims asserted hereunder, in an amount to be determined at trial, but in any event not less than $250,000.00, plus interest;

Award punitive damages against Defendants jointly and severally (excluding Defendant District) to deter such behavior in the future, in an amount to be determined at trial, but in any event not less than $250,000.00, plus interest;

Award Plaintiffs the costs of this suit, including reasonable attorneys' fees; and

Such other relief as this Court deems just and proper.

**Count III - Intentional and Negligent Infliction of Emotional Distress**

51. Plaintiff incorporates by reference paragraphs 1-50 as though fully set forth herein.

52. Defendant Amtrak, via its employees John Doe #1 and John Doe #2, as well as John Doe #1 and John Doe #2 individually, acted in a reckless and intentional manner when it accused Plaintiff of being associated with certain lawless acts and as not being disabled. Defendant further acted in a reckless and intentional manner by removing Plaintiff from the train under false pretenses and threat of police intervention.

53. Defendant Amtrak's actions via its employees were extreme and outrageous both in its false accusations against the Plaintiff and then by threatening police action and ultimately removing the Plaintiff from the train.

54. As a direct result of Defendant's actions Plaintiff has suffered substantial mental emotional harm.

WHEREFORE Plaintiffs respectfully request that this court enters judgment for Plaintiffs and against Defendants jointly and severally as follows:

Award compensatory damages against Defendants jointly and severally for the claims asserted hereunder, in an amount to be determined at trial, but in any event not less than $250,000.00, plus interest;

Award punitive damages against Defendants jointly and severally (excluding Defendant District) to deter such behavior in the future, in an amount to be determined at trial, but in any event not less than $250,000.00, plus interest;

Award Plaintiffs the costs of this suit, including reasonable attorneys' fees; and

Such other relief as this Court deems just and proper.

## Count IV - False Imprisonment

55. Plaintiff incorporates by reference paragraphs 1-38 as though fully set forth herein.
56. Defendant Amtrak, along with individual Defendants, John Doe #1 and John Doe #2, unlawfully and intentionally detained Plaintiff without his consent when together they demanded he wait for the police and additional Amtrak employees to arrive to the scene. Plaintiff was further detained when he was unable to continue on board his train to his destination and forced to wait in Washington, DC for an extended period of time.
57. Plaintiff did not take any actions which would have justified the unreasonable time Plaintiff was detained and the detention caused significant damages to the Plaintiff.

WHEREFORE Plaintiffs respectfully request that this court enters judgment for Plaintiffs and against Defendants jointly and severally as follows:

Award compensatory damages against Defendants jointly and severally for the claims asserted hereunder, in an amount to be determined at trial, but in any event not less than $250,000.00, plus interest;

Award punitive damages against Defendants jointly and severally (excluding Defendant District) to deter such behavior in the future, in an amount to be determined at trial, but in any event not less than $250,000.00, plus interest;

Award Plaintiffs the costs of this suit, including reasonable attorneys' fees; and

Such other relief as this Court deems just and proper.

## Discrimination Based on Race - 42 U.S.C. § 2000 *et seq.*

58. Plaintiff incorporates by reference paragraphs 1-38 as though fully set forth herein.
59. 42 USC § 1981 provides that all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts regardless of race.
60. The term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 USC §1981(b).
61. Defendant Amtrak is a business offering transportation via rail to the public and Plaintiff received and paid for services from Defendants.

62. Plaintiff's contract interest was created when he purchased a ticket and boarded Amtrak's train.

63. While Plaintiff attempted to simply board and ride the train to his destination, Defendant Amtrak, along with Defendant John Doe #1 and John Doe #2, without justification, began to lodge false accusations of being an unlawful political agitator, falsifying a disability against Plaintiff, and then forcefully removing him from the train. Defendants actions interfered with Plaintiff's intent and ability to follow through on his contract with Amtrak.

64. Plaintiff felt threatened, embarrassed and humiliated and consequently was prevented from continuing in his travel to his intended destination via Amtrak's services.

65. Upon information and belief, Defendants' unsubstantiated accusations and excessive aggressions toward this African American and disabled Plaintiff, were mere suspicions motivated by race-based surveillance and profiling.

WHEREFORE, Plaintiffs respectfully urge this Court to find against Defendants Amtrak, Joh Doe #1, and John Doe #2 based upon the above referenced violations of Plaintiff's constitutional rights under 42 U.S.C. §§1981, to award the following damages:

Compensatory damages in an amount not less than $100,000.00 the exact amount to be determined at trial;

Punitive damages related to Defendants' violation of Plaintiff's constitutional rights in an exact amount to be determined at trial, but in no event less than $ 100,000.00;

Attorney's fees and costs pursuant to 42 USC §1988;

Appropriate equitable relief; and

Such further relief as this honorable Court deems just and necessary

## Count V - Discrimination Prohibited by the Americans with Disabilities Act - 42 U.S.C. § 12132 *et seq.*

66. Title II of the ADA, 42 U.S.C. § 12132 et seq. provides, in relevant part:

    *Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.*

67. Defendant is a "public entity" within the meaning of 42 U.S.C. § 12131(1)(c) because Defendant is National Railroad Passenger Corporation

68. Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 12102, because of the previously described medical condition that substantially limits one or more of major life activities.

69. 49 C.F.R. Part 37 "applies to the following entities, whether or not they receive Federal financial assistance from the Department of Transportation: (1) Any public entity that provides designated public transportation or intercity or commuter rail transportation" 49 C.F.R. § 37.21(a). For entities receiving Federal financial assistance from the Department of Transportation, compliance with applicable requirements of this part is a condition of compliance with section 504 of the Rehabilitation Act of 1973 and of receiving financial assistance. 49 C.F.R. § 37.21(b).

70. DOT regulations prohibit public entities from "deny[ing] to any individual with a disability the opportunity to use the entity's transportation service for the general public, if the individual is capable of using that service." 49 C.F.R. § 37.5.

13

71. 49 C.F.R. § 37.173 mandates the following:

    *Each public or private entity which operates a fixed route or demand responsive system shall ensure that personnel are trained to proficiency, as appropriate to their duties, so that they operate vehicles and equipment safely and properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities.*

72. Defendant's actions, as described herein, constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulations, including but not limited to 28 C.F.R. § 37.

73. Plaintiff was excluded from participation in and denied the benefits of Amtrak's stated mission of providing transportation services to the public by removing Plaintiff from the train and not allowing Plaintiff to use the designated seats for individuals with disabilities.

74. Amtrak's violations of Title II have caused harm to Plaintiff and pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

**Count VI - Discrimination Prohibited by the Americans with Disabilities Act**

**- 42 U.S.C. § 12162 *et seq*.**

75. Plaintiff incorporates by reference paragraphs 1-38 as though fully set forth herein.

76. 42 U.S.C. § 12162(a)(1) mandates:

    *It shall be considered discrimination for purposes of section 12132 of this title and section 794 of title 29 for a person who provides intercity rail transportation to fail to have at least one passenger car per train that is readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, in accordance with regulations issued under section 12164 of this title, as soon as practicable, but in no event later than 5 years after July 26, 1990.*

77. Defendant's actions, as described herein, constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12162, and its implementing regulations, including but not limited to 28 C.F.R. § 37.

78. Plaintiff was excluded from participation in and denied the benefits of Amtrak's stated mission of providing transportation services to the public by removing Plaintiff from the train and not allowing Plaintiff to use the designated seats for individuals with disabilities.

79. Amtrak's violations of Title II have caused harm to Plaintiff and pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

**Count VII - Violation of Section 504 of the Rehabilitation Act of 1973 - 29 U.S.C. § 794 *et seq*.**

80. Plaintiff incorporates by reference paragraphs 1-52 as though fully set forth herein.

81. Section 504 of the Rehabilitation Act of 1973 (as amended) provides that:

    *No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.] 29 U.S.C. § 794.*

82. The statute defines an "individual with a disability" as "an individual who has a physical or mental impairment that substantially limits one or more major life activities of such individual." 29 U.S.C. § 705(20)(B) (citing 42 U.S.C. § 12102).

83. "Otherwise qualified" means a person who "meets the essential eligibility requirements for participation in, or receipt of benefits from, that program or activity." 28 C.F.R. § 39.103.

84. Plaintiff is "qualified individual with a disability" as defined in the Act and implementing regulations, because of the medical condition described herein which substantially limits one or more of his major life activities; however would otherwise be capable of participating in, or receiving benefits from, the goods, services, programs, and/or activities offered by Defendant.

85. The Plaintiff is an individual with a disability within the meaning of the Rehabilitation Act because of impairments which limit one or more major life activities.

86. Amtrak receives federal financial assistance to operate and provide transportation services.

87. As a result of being qualified "individual[s] with a disability" within the meaning of the Act and the implementing regulations, Plaintiff is entitled to reasonable accommodations in the form of auxiliary aids and services that provide them equal access to the Websites and Apps.

88. As alleged herein, Amtrak has discriminated against the Plaintiff when it denied him a seat in the section designated for individuals with disabilities and thereafter removing him from the train.

89. Amtrak's violations of Section 504 of the Rehabilitation Act have proximately caused injuries to Plaintiff, as set forth herein.

90. Therefore Plaintiff requests relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

1. Award compensatory damages against Defendants jointly and severally for the claims asserted hereunder, in an amount to be determined at trial, but in any event not less than $250,000.00, plus interest;
2. Award punitive damages against Defendants jointly and severally (excluding Defendant District) to deter such behavior in the future, in an amount to be determined at trial, but in any event not less than $250,000.00, plus interest;
3. Payment of actual, statutory, and other damages;
4. Award Plaintiffs the costs of this suit, including reasonable attorneys' fees; and
5. Such other relief as this Court deems just and proper

## JURY DEMAND

1. Plaintiff demands a jury trial on all issues.

Respectfully Submitted,

/s/ Robert Pfeferman

Robert Pfeferman, (#1020347)
1627 K St. NW Suite 400
Washington, DC 20006
(301)254-1809
robert@pmlawdc.com
*Counsel for the Plaintiff*